UNITED STATES of America, Appellee,

v.

Robert Alan BERZON, Defendant, Appellant.

No. 90–2080.

United States Court of Appeals, First Circuit.

Heard May 9, 1991.

Decided Aug. 5, 1991.

Jack I. Zalkind, with whom Neil F. Faigel and Ellen Y. Suni were on brief, for appellant.

Margaret D. McGaughey, Asst. U.S. Atty., with whom Richard S. Cohen, U.S. Atty., and Nicholas M. Gess, Asst. U.S. Atty., were on brief, for the U.S.

Before CAMPBELL, Circuit Judge, COFFIN, Senior Circuit Judge, and SELYA, Circuit Judge.

CAMPBELL, Circuit Judge.

Defendant-appellant Robert A. Berzon appeals from his Guidelines sentence of thirty-six months imprisonment for narcotics offenses. Berzon contends that the sentence, and specifically an upward adjustment under U.S.S.G. § 3B1.1(c)[1] was improperly predicated upon information regarding his role in the offense which was not presented to him or his attorney and which he had no opportunity to rebut. This information consisted of testimony at codefendant Steven Novak's sentencing hearing

---

1. U.S.S.G. § 3B.1 *Aggravating Role*, provides: Based on the defendant's role in the offense, increase the offense level as follows:
(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
(b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.
(c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

from the case agent, Drug Enforcement Administration Special Agent Michael A. Cunniff. We agree that a defendant must be provided with a meaningful opportunity to comment on the factual information on which his or her sentence is based. Berzon was not advised that the version of the facts contained in Cunniff's testimony at Novak's sentencing hearing would be considered in connection with his sentence, if in fact it was. If the district court considered this information in sentencing Berzon, Berzon should have been provided with notice and an adequate opportunity to comment "on this information. As it is unclear whether the district court took account of the information, we do not disturb Berzon's sentence at this juncture but rather remand to the original sentencing judge with directions that he indicate in the record whether he materially relied on the information in sentencing Berzon. If the judge certifies that he did not, the sentence will stand. If the court indicates that it did rely materially, it should then vacate Berzon's sentence and Berzon should be resentenced by a different district judge.

## I.

### Background

This case arises out of an investigation of a drug ring, managed by Michael Goldin,[2] that imported cocaine and marijuana from Colombia into the United States via Florida. In November 1988, a ten thousand pound shipment of marijuana was delivered to the Portland, Maine area with the aid of two confidential informants (CI's). The CI's continued undercover involvement in the venture, periodically reporting information obtained from Goldin to law enforcement officials. In an effort to uncover Goldin's drug-trafficking network, controlled deliveries of marijuana to Goldin's customers were arranged, including a transaction involving Berzon and three codefendants.

The following facts, summarized in Berzon's presentence investigation report

(PSI), are undisputed. Goldin made arrangements to negotiate with customers on November 21, 1988, after which the customers would leave the keys to their cars with Goldin. Goldin would then give the keys to two associates who were, in fact, undercover agents (apparently distinct from the two CI's), who would drive the cars to a site where the marijuana would be loaded and return the cars to the Goldin's hotel, and Goldin would then return the keys to the customers. Goldin met with Berzon, and codefendants Novak, Robert Haskins and Kenneth Braun. Goldin gave to the undercover agents keys to a green pickup truck registered to Haskins and a black Cadillac rented by Novak. The agents loaded the green pickup truck with 74 bales (approximately 1850 pounds) and the black Cadillac with 9 bales (approximately 225 pounds) of marijuana. Surveillance agents then observed Haskins get out of a Jeep registered to Braun, get into his loaded green pickup truck and drive off. Haskins was stopped driving southbound on the Maine turnpike and arrested. Somewhat later, the surveillance agents observed Novak get out of Braun's Jeep, enter the rented loaded black Cadillac, and drive away, with Braun and Berzon following in the Jeep. Both vehicles were subsequently stopped and the defendants arrested.

### Presentencing Proceedings

Berzon was charged in the first two counts of a five count indictment returned against the four defendants. Count II charged Berzon alone with possession with intent to distribute and aiding and abetting the possession with intent to distribute in excess of 50 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2. Count I charged all four defendants, including Berzon, with conspiracy to commit the same offenses with which Berzon was charged in Count II, in violation of 21 U.S.C. § 846. The remaining counts charged Berzon's codefendants.

---

**2.** Goldin's name is occasionally spelled in the record "Golden." It is clear, however, that these two spellings refer to the same person.

In connection with a pretrial motion to dismiss the indictment on the basis of alleged government misconduct in bringing the marijuana into the United States, the case agent's (Cunniff's), detailed summary investigation report dated January 4, 1989 was provided to the defendants and the court. That report, while not specifically addressing Berzon's role in the offense, included relevant information arguably suggesting Berzon's managerial role. The report stated that on November 21, 1988, Berzon reportedly told Goldin he would not deal with Goldin in the presence of the CI's because Berzon suspected that they were cooperating with the government. Cunniff reported that on November 22 Goldin told the CI's that Berzon had arrived but that Berzon would not be transporting any marijuana himself. Cunniff also reported that later on November 22, Goldin told the CI's that Novak was on his way to Goldin's hotel, that Berzon was eating at a nearby restaurant, that Berzon would not be able to see the CI's, and that he (Goldin), was going to meet Novak and Berzon at the restaurant so that Berzon and Novak could be assured the CI's were uninvolved in the deal. The report also recounted the arrangements for loading the vehicles with marijuana, noting, "GOLDIN told the cooperating individuals that the vehicles belonged to the BERZON group."

Also, a hearing, at which Berzon was represented by counsel,[3] was held on June 21 and 22, 1989, on defendants' motions to suppress evidence, claiming that they were arrested and their vehicles searched in violation of the Fourth Amendment. Cunniff testified, and was cross-examined by counsel representing Berzon, regarding the defendants' activities during the operation. The testimony was not specifically directed to the defendants' roles in the offense, but again testimony arguably suggesting Berzon's leadership role was adduced. Cunniff testified that the CI's mentioned that Novak and Berzon were coming by car and commercial airline to explore the purchase of marijuana. Cunniff recalled that, according to Goldin, it was Berzon that told

Goldin to load Novak's rented Cadillac with marijuana. He also indicated that the keys to the pickup truck were given to Goldin by Berzon. In addition, Cunniff indicated that he had no knowledge that codefendant Haskins ever had a conversation with Goldin or the CI's, and indicated no one told him Haskins was coming to Maine to pick up marijuana or that Haskins was in the marijuana business.

Subsequent to these pretrial motions, Berzon pleaded guilty to Counts I and II of the indictment. As a factual basis for the plea, the government stipulated that Goldin "negotiated with Steven Novak and Robert Berzon" for the distribution of $50,000 worth of marijuana at a price of $550 per pound, for a total of approximately 90 pounds of marijuana, notwithstanding evidence that the vehicles were loaded with much more marijuana and that the $50,000 was a down payment for the larger purchase. Codefendants Novak and Haskins also pleaded guilty. Charges against Braun were dismissed. A presentence conference was scheduled for the remaining three defendants on June 4, 1990. However, on May 30, 1990, Berzon filed a motion to continue the presentence conference on the grounds that his attorney was being admitted to the hospital on May 31, 1990 for heart by-pass surgery. The motion was granted and the presentence conference for Berzon was rescheduled for September 11, 1990.

Meanwhile, codefendants' presentence conference was held on June 4, 1990 as scheduled, and their sentencing hearings were held on June 18, 1990, while Berzon's attorney was recovering from surgery. One issue at codefendant Novak's sentencing was whether a two level upward adjustment should be made for Novak's role in the offense as a leader and organizer under U.S.S.G. § 3B1.1(c). The government called on Special Agent Michael A. Cunniff to testify in this regard. Essentially, Cunniff testified that Novak acted as a broker between Goldin and Berzon, and as such should be considered an "organizer" in the

---

**3.** Berzon was represented by Richard Egbert, Esq., on behalf of Berzon's attorney Jack Zal-

kind, Esq., who apparently was unable to attend.

offense. In the course of his testimony, Cunniff offered significant information relating to Berzon's role in the offense. Cunniff's testimony—of which Berzon and his attorney claim they were unaware until after Berzon's own sentencing—is at the focus of this dispute on appeal and is considered in greater detail below. The district court found that Novak was not shown to have acted as a leader or organizer of the other defendants' offense conduct, as contemplated under U.S.S.G. § 3B1.1, since it could not find Novak exercised control over the others' conduct.

Berzon's presentence conference was held on September 11, 1990. The PSI, calculated a base offense level of 30 based on the 942 kilograms of marijuana seized at the time of arrest and the application of U.S.S.G. § 2D1.1(a)(3)[4] for amounts between 700 and 1,000 kilograms of marijuana. At the conference, consistent with the government stipulation at the time of the plea, counsel for both sides agreed that only 40.9 kilograms (90 pounds) of marijuana was involved, yielding a base offense level of 20.[5] The government specifically noted that the court had found a base offense level of 20 at Steven Novak's sentencing. Remaining to be resolved, however, was the PSI and government recommendation that Berzon's base offense level be increased on account of his leadership role in the offense under U.S.S.G. § 3B1.1(c). At the end of the presentence conference, Berzon's attorney inquired whether the court had any tentative "feeling" about the issues presented. In response, the court indicated it wanted to hear the evidence about the issues to be resolved. The court did not indicate it had yet made up its mind as to the character of Berzon's role in the offense, nor did it mention having heard evidence at Novak's sentencing hearing relevant to Berzon's role.

*The Presentence Report*

The PSI was dated April 12, 1990, more than two months prior to Novak's sentencing hearing, and thus was not based on Cunniff's testimony at that hearing. The PSI's assertions regarding Berzon's role in the offense were contained in paragraphs 19 and 22, to which Berzon objected. These paragraphs stated, in pertinent part, as follows:

19. Goldin informed the [Confidential Informants] that Steven Novak, a/k/a "Toy" and Berzon had arrived in the Portland area but that he (Goldin) would have to meet them alone because they did not trust the [Confidential Informants].... During the afternoon of 11/22/88 Goldin gave the undercover agents the keys to two vehicles which he indicated belonged to the Berzon group: a green pickup truck registered to Haskins and a black Cadillac rented by Novak....

22. Berzon and Novak are the leaders of this group, since they negotiated with Goldin and also directed the activities of the other two members. According to testimony at the suppression hearing, Berzon paid Goldin a $50,000 down payment for the marijuana.

In addition, paragraph 46 of the PSI reiterated the allegations of paragraph 22, and recommended the upward adjustment.

Berzon filed extensive objections to the PSI, including objections to the PSI's assertions regarding his role in the offense. Berzon's written objection to paragraph 19 asserted, in relevant part, that the characterization of the defendants as the "Berzon group" "is not at all factual, since BERZON owned none of the vehicles and, indeed, GOLDIN never suggested that the group was led by BERZON." In addition, Berzon's written objection to paragraph 22 stated that "there is absolutely no indication nor is there any evidence that BERZON directed the activities of any of the

---

**4.** U.S.S.G. § 2D1.1(a)(3) provides for an offense level determined by reference to the Drug Quantity Table set forth in subsection U.S.S.G. § 2D1.1(c). U.S.S.G. § 2D1.1(c)(7) specifies a base offense level of 30 for at least 700 but less than 1,000 kilograms of marijuana.

**5.** U.S.S.G. § 2D1.1(c)(12) specifies a base offense level of 20 for at least 40 kilograms but less than 60 kilograms of marijuana.

defendants. As a matter of fact, the evidence indicates the opposite." Berzon's written objection to paragraph 46 stated: "The only information supplied to the government was a statement by GOLDIN indicating that BERZON pointed to a bag which contained $50,000. . . ." In response to Berzon's written objections, the Probation Department filed an addendum to the PSI, dated May 2, 1990 (again prior to Novak's sentencing hearing and thus not based on it), which stated:

Mr. Berzon, as well as Codefendant Novak, made arrangements and dealings with Mr. Goldin. Mr. Berzon also provided the $50,000 down payment for the purchase of the drugs. Both Mr. Berzon and Mr. Novak were considered by the case agent [Cunniff] as the leaders. This again can be provided through testimony by the case agent [Cunniff] at the time of the sentencing hearing.

### Berzon's Sentencing Hearing

At Berzon's sentencing hearing on September 24, 1990, Berzon's attorney again strenuously objected to the characterization of the defendants as the "Berzon group," asserting that Berzon was "not an organizer or leader in any way," but that "it was Novak that initiated it. I'll show you the evidence." In response to these objections, the district court then stated:

I understand there may be two ways of looking at the evidence. I am intimately familiar with this evidence, I have heard it over and over again in a number of cases. I am satisfied that Mr. Berzon is displayed by that evidence by a preponderance of the evidence, which is a standard I'm supposed to apply, as a member of a group or persons that he was instrumental in bringing here and that he did, I conclude and find, contribute some $50,-000 as payment for the marijuana, and was instrumental in giving instructions

to people in that group on various occasions. And I deduced from all of the facts known to me that he was a leader of that group.

In response to the court's summary, Berzon's attorney attempted to address the evidence known to him on which Berzon could have been found to be a leader. He offered as evidence portions of the December 6, 1988 debriefing report that included information obtained when Goldin agreed to cooperate with the government. This report was earlier furnished to Berzon as pretrial discovery, and included Goldin's handwritten notations. Berzon's attorney acknowledged that this evidence showed that Berzon contributed the $50,000 and that Berzon did not dispute this fact. (In fact, the debriefing report indicated that it was Berzon that told Goldin that "they had brought a $50,000," and that "Berzon gave the money to Goldin," which Goldin put in his boots.) [6] Berzon also argued that Goldin indicated, by crossing out the word "Berzon" on the debriefing report, that he never knew Berzon's name until he was arrested. Berzon contended this was significant because it undermined the characterization of the defendants as the "Berzon group," attributed to Goldin in the PSI. Berzon's attorney went on to argue that the evidence did not show that Berzon was a leader or that he gave anyone orders or directions, nor did it show that he hired any vehicles, or that he instructed the agents where to go. Berzon's attorney also argued that, although he was not at the suppression hearing, "if the Court took that into consideration I believe that also has no evidence indicating that Mr. Berzon was a leader or organizer. . . . I think the evidence only indicates [Berzon] was a customer."

The court indicated that it was familiar with the December 6, 1988 report, but

---

**6.** The portions of the debriefing report introduced into evidence at Berzon's sentencing hearing also indicated that Goldin "had previously attempted to conduct marijuana business with NOVAK,"; that Goldin, at his meeting with Novak and Berzon, gave "them" a sample of the marijuana; and that Goldin "told BERZON and NOVAK at some point that he would have mari-

juana loaded into both of their vehicles. . . ." Further, the report stated that Goldin "told BERZON and NOVAK" that the marijuana would cost $500 per pound, but Goldin circled the word BERZON and wrote in the margin, "told Novak." This evidence is far from conclusive as to Berzon's role in the offense.

made its finding "on the basis of the evidence, as I heard it in what is indicated in the record in this case [7] from the agents that dealt with Mr. Berzon and observed his conduct. It is apparent to me that that (sic) he was instrumental in bringing one group and orchestrating their movements." The court did not specifically reference Novak's sentencing hearing. Thereafter, Berzon's attorney requested he be permitted to introduce an affidavit from Berzon, which request was denied for reasons that are not challenged on appeal.[8] Finally, the court asked whether Berzon would testify, which he did not. In its Memorandum of Sentencing Judgment, the court stated:

> The Base Offense Level is also subject to an increase of two (2) levels, to level "22," pursuant to § 3B1.1(c) because the Defendant played a leadership role in the offense conduct, as the Court now FINDS.

### Cunniff's Testimony at Novak's Sentencing Hearing

Berzon's attorney represented to this court on appeal that after the sentencing hearing, surprised that the court had concluded Berzon was a leader or organizer without testimony at Berzon's hearing from Agent Cunniff, he first discovered that the government called Cunniff at Novak's sentencing hearing to testify regarding Novak's role in the offense. That testimony, recounted in detail below, constituted a detailed version of the facts somewhat different than had otherwise been proffered.[9] While much of the testimony generally repeated facts asserted in the PSI or elsewhere appearing in the record in Berzon's case, it also included assertions of facts not otherwise presented to Berzon

and the court. In particular, Cunniff elucidated his view that Novak acted as a broker in the transaction, notifying Berzon that Goldin was selling marijuana, and was to receive a commission for his role. Among the three remaining codefendants, Cunniff testified that Berzon employed Haskins as a courier, and that Berzon alone did the negotiating with Goldin. Novak's counsel also argued directly that Berzon was the leader, and repeatedly referred to defendants as "the Berzon group" (though this appeared in Cunniff's January 4, 1989 report and the PSI). Also, both Cunniff and Novak's counsel (in his argument) stated that Berzon had had a prior relationship with Goldin.

On direct examination at Novak's sentencing, Cunniff testified that Novak assisted Goldin by contacting Berzon, who "had brought two vehicles to the area to receive amounts of marijuana." Cunniff testified, "Robert Berzon, the person whom Novak had contacted, produced a [$]50,000 down payment which was applied toward the purchase of marijuana seized in connection with this incident." Cunniff also testified that Haskins, who drove the pickup truck loaded with 1,850 pounds of marijuana, "was employed as a courier by Berzon...." On direct examination, Cunniff summarized:

> My understanding is that it was Stephen Novak, and after communicating with Mickey Golden who, as I said, was a suspect in the case, brought Mr. Berzon, Kenneth Brawn (sic) and Robert Haskins to Maine in connection with the marijuana distribution.

Thereafter, Novak's attorney extensively cross-examined Agent Cunniff. Cunniff

---

7. The court's reference to the record *in this case* is arguably in conflict with its earlier reference to having heard the evidence "over and over again in a number of cases."

8. Apparently, Berzon did not produce the affidavit until the middle of the sentencing hearing, and had not served the government with it. The affidavit has not been included in the record on appeal.

9. We note that the transcript of Novak's sentencing hearing, while included in Berzon's appendix to his brief on appeal, was never made a part of the record in Berzon's case in the district court, which, of course, is largely the basis for Berzon's complaint on appeal. We are, however, entitled to take judicial notice of the records of the sentencing proceedings in Novak's case. *Kowalski v. Gagne,* 914 F.2d 299, 305 (1st Cir.1990) ("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand.").

testified on cross-examination that he had not spoken with Novak, Berzon, Braun or Haskins, and had no personal knowledge of the arrangements between them. Rather, Cunniff conceded that his conclusions regarding the defendants' internal arrangements were inferences based on the facts stated in Cunniff's January 4, 1989 investigation report. Nevertheless, Cunniff explained that, based on his understanding of the case, Novak acted as a broker for Goldin, and that the money for the marijuana "came from Berzon and Brawn (sic) as a result of arrangements made by [Novak]." [10] Cunniff also indicated, arguably contrary to the conclusion that Berzon was the leader, that Berzon probably came to Maine with Braun, that Berzon and Braun were acting together, that Braun was as much a part of the group as Berzon, and that in all likelihood Braun was perhaps an equal partner with regard to the financing of the purchase.

Regarding negotiations for the price of the marijuana, Cunniff first indicated on cross-examination that, based on a December 6, 1988 report of information obtained from Goldin,[11] Berzon and Novak negotiat-

ed the price. On further questioning, however, Cunniff conceded that, based on Goldin's information in the debriefing report, Goldin told Berzon and Novak that the price per pound would be $500, and that the price was not disputed. Further, Cunniff conceded, based on the debriefing report, that Berzon did the negotiating.[12] Cunniff then explained that based on his experience in such cases, "I believe that Novak would receive a commission for the marijuana and that if that was sold to the Berzon group, Berzon would pay Novak and Novak would pay Golden, and he would remove his commission from that." He explained that Berzon's $50,000 down payment, while transferred physically directly to Goldin, "was transferred as a result of Novak's brokerage."

Thereafter, on questioning by the court, Cunniff summarized his position that Novak was an organizer or leader because "he was a broker, receiving a commission, and that he caused the other men to come here and organize." Cunniff indicated that Novak facilitated the deal because, "[t]he particular facts of this case suggest that Mr.

**10.** Cunniff testified as follows:

A. I believe the money physically was brought to the scene by Berzon, and Berzon and Brawn (sic) turned it over to Golden and, it was as a result of arrangements made by [Novak]."

.    .    .    .    .

Q. Now, again, what you have told us, in my understanding of what you told us, is essentially Mr. Novak introduced Mr. Berzon and Mr. Brawn (sic) to Michael Golden; is that correct? Is that an accurate statement on my part?
A. My recollection is that he knew Berzon before, that's to the best of my memory. That is the best of my information.
Q. You mean Golden or Novak?
A. Golden. I don't believe he knew Brawn (sic) before.
Q. But, again, so that my understanding is clear in my own mind, it is your feeling, based upon your overall knowledge of the case that Novak contacted Berzon or Brawn (sic) and informed them that Golden was doing business in Maine, marijuana was for sale; is that accurate?
A. Yes.

**11.** This presumably was the debriefing report, portions of which were admitted as an exhibit at Berzon's sentencing hearing. The report was

marked at Novak's sentencing for identification but apparently was not admitted as an exhibit, and hence was not made part of the record in Novak's case.

**12.** Cunniff's testimony was as follows:
Q. [Goldin] didn't tell you that Mr. Novak started negotiating with him with regard to the price that they would pay based upon factors such as the amount of marijuana that would be purchased; did he? To break the question down, there were negotiations of Berzon and in your client's presence he told Mr. Golden he had brought a $50,000 payment?
A. Yes.
Q. It was Berzon that did the talking to Golden?
A. Yes.
Q. That statement was by Berzon?
A. Yes.
Q. In Novak's presence?
A. Yes.
Q. It was Berzon talking about the money and the amount available?
A. Yes.
Q. It was not Novak that said a word, as far as you can tell, based upon the information you have during that period of time; is that right?
A. Correct.

Berzon was reluctant to deal with Golden, particularly if the [CI's] were involved," though he believed Berzon and Goldin had prior contact. Cunniff also indicated he had no information that Novak provided his own personal funds for the deal, but "caused Berzon." Finally, on argument to the court, Novak's counsel noted:

> Mr. Berzon, according to the testimony here, and according to my knowledge of the case, based on the reports that Mr. Berzon and Mr. Golden were known to each other and aware of each other's businesses, and that they had met on several occasions in Florida.... I think all [Novak] did is put two people together. He did not organize it. If there's anybody organizing it, it was Mr. Golden and certainly, in my view of the evidence not Mr. Novak. Within that group it would have been Berzon organizing and causing to have others come to the district to help him in acquisition of marijuana.

In response, the government attorney noted that Berzon was worried that the CI's were government agents, and utilized Novak as a broker to protect himself.

13. 18 U.S.C. § 3552(d) provides:
   > The court shall assure that a report filed pursuant to this section is disclosed to the defendant, the counsel for the defendant, and the attorney for the Government at least ten days prior to the date set for sentencing, unless this minimum period is waived by the defendant.

14. Fed.R.Crim.P. 32(a)(1) requires that the court, at the sentencing hearing, permit the defendant "to comment upon the probation officer's determination and other matters relating to the appropriate sentence." Subsection (c)(3)(A) provides:
   > At least 10 days before imposing sentence, unless this minimum period is waived by the defendant, the court shall provide the defendant and the defendants counsel with a copy of the report of the presentence investigation, including the information required by subdivision (c)(2) [enumerating information to be included in the presentence report] but not including any final recommendation as to sentence, and not to the extent that in the opinion of the court the report contains diagnostic opinions, which if disclosed, might seriously disrupt a program of rehabilitation; or sources of information obtained upon a promise of confidentiality; or any other information which, if disclosed, might result in harm,

## II.

On appeal, Berzon contends the district court improperly resolved the disputed sentencing issue of Berzon's role as a leader or organizer under U.S.S.G. § 3B1.1(c) against him in reliance on Special Agent Cunniff's prior testimony at codefendant Novak's sentencing hearing, without notifying Berzon that such testimony regarding Berzon's role in the offense had been given and was being considered. Berzon asserts that at his own sentencing hearing he misapprehended the court's statement that it had heard the evidence "in a number of cases," not realizing that the court was referring, among others, to Novak's sentencing hearing. Berzon contends that 18 U.S.C. § 3552(d),[13] Fed.R.Crim.P. 32,[14] U.S.S.G. § 6A1.3,[15] and the Due Process Clause of the United States Constitution require that a defendant be apprised of the information to be relied on in sentencing and an opportunity to challenge and rebut such information. He maintains that the district court's failure to indicate that it had heard evidence regarding this disputed issue of which the defendant asserts he was unaware—thus depriving him of the

physical or otherwise, to the defendant or other persons. The court shall afford the defendant and the defendant's counsel an opportunity to comment on the report and, in the discretion of the court, to introduce testimony or other information relating to any alleged factual inaccuracy contained in it.

15. U.S.S.G. § 6A1.3 *Resolution of Disputed Factors*, (**Policy Statement**), provides:
   > (a) When any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor. In resolving any reasonable dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.
   > (b) The court shall resolve disputed sentencing factors in accordance with Rule 32(a)(1), Fed.R.Crim.P. (effective Nov. 1, 1987), notify the parties of its tentative findings and provide a reasonable opportunity for the submission of oral or written objections before imposition of sentence.

opportunity to rebut it—violated the intent of the statutory provisions as well as his constitutional rights.

The government responds that Berzon should have realized that evidence possibly relevant to himself was adduced at Novak's sentencing hearing, a hearing Berzon's counsel knew had taken place. Since Berzon had constructive notice of the contents of the Novak hearing, he was in a position to rebut this information at his own sentencing hearing, and should not be heard to complain that he lacked opportunity to do so. The government emphasizes that Berzon's case proceeded in tandem with Novak's up until Berzon's attorney's illness prior to the presentence conferences. Berzon also knew that Novak's sentencing had taken place before the same judge who would sentence him. At Berzon's presentence conference, his counsel noted to the court that from "the other codefendants", the court had determined the base offense level based on the government's stipulation to a 40 kilogram amount of marijuana, and the government corroborated that this was true in the Novak case. Further, the PSI recommended that Novak and Berzon each receive two level enhancements as leaders and organizers. The government thus maintains that Berzon was constructively on notice that information relevant to his own case was adduced at Novak's sentencing. This should have led Berzon's counsel to order a transcript of that proceeding, as he was entitled to do, or otherwise to determine what was said that might have relevance to his client's sentence. Doing so, he would have been able to do what was necessary at Berzon's hearing to try to offset the impression on the judge made by Agent Cunniff's testimony.

This argument is not without some force. We agree that Berzon had good reason to suspect that information relevant to his own sentencing was proffered to the judge at Novak's sentencing.[16] Nevertheless, we decline to conclude that, as a mat-

ter of law, Berzon was on constructive notice that his sentencing judge had learned of, and might be influenced by evidence adduced at Novak's sentencing. Novak's proceeding was not part of a joint proceeding in which Berzon or his counsel took part. In the present circumstances it would be confusing and potentially unfair to try to ascertain, case by case, when a defendant should be expected to inquire on his own. Where, for sentencing, the court uses new information garnered from an entirely separate proceeding, we do not believe the onus should be on a defendant or his counsel to discover this in advance, on their own. Rather the court should apprise the defendant so that he can take steps, if possible, to rebut it. Alternatively, if the court is exposed to new information in a separate case that is plainly material to a major issue in defendant's sentencing, but plans to ignore this other evidence altogether, then that intention must be noted on the record.

We recently considered the use of undisclosed evidence for sentencing purposes in *United States v. Curran*, 926 F.2d 59 (1st Cir.1991). In *Curran*, the defendant pled guilty to offenses committed in a scheme to commit fraud. The presentence report included a victim impact section, containing victims' statements, to which Curran objected. In addition, the court received additional letters from defendant's family and other victims, which were not part of the presentence report. These additional letters, although maintained by the probation department in its files, were not disclosed to the defendant or his attorney. At sentencing the court quoted from one of the theretofore undisclosed letters from a victim which urged the severest penalty possible, and then imposed a sentence which exceeded the government's recommendation. *Curran*, 926 F.2d at 60–61. On appeal, this court exercised its supervisory power over judicial procedure to remand the case for resentencing, because there were relevant statements of fact in the

---

**16.** While Berzon claims on appeal that he was not actually aware of this information, this has

not, in any event, been established as fact.

undisclosed letters which were not included in the PSI "victim impact" report and hence which the defendant did not have an opportunity to contradict. *Curran*, 926 F.2d at 62. We concluded that, without notice to defendant regarding the additional letters, the sentencing procedure "risked at least an appearance of impropriety with which we are not comfortable." *Curran*, 926 F.2d at 64. In addition, this court held that,

> henceforth, a sentencing court, whenever it considers documents to which Rule 32 does not apply, should either make clear that the document is not being used for its factual content, or should disclose to the defendant as much as was relied upon, in a timely manner, so as to afford the defendant a fair opportunity to examine and challenge it.

*Curran*, 926 F.2d at 63.

In *Curran*, we found it well settled "that a defendant has a due process right to be sentenced upon information which is not false or materially incorrect." 926 F.2d at 61 (citing cases). *See Townsend v. Burke*, 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948). We further recognized that Fed.R.Crim.P. 32—which requires disclosure of the presentence report to the defendant and an opportunity for the defendant to contest the accuracy of it—"embodies the congressional intent to assure a defendant's due process rights in the sentencing process." *Curran*, 926 F.2d at 61. This requirement was designed by Congress to "ensure that the 'report [is] completely accurate in every material respect.'" *Id.* at 62 (quoting *United States v. Romano*, 825 F.2d 725, 728 (2d Cir.1987) (quoting H.R.Rep. No. 247, 94th Cong., 1st Sess. 18, *reprinted in* 1975 U.S.Code Cong. & Admin.News 674, 690)); *see also United States v. Pellerito*, 918 F.2d 999, 1002 (1st Cir.1990); *United States v. Prescott*, 920 F.2d 139, 143 (2d Cir.1990) ("To make defendant's [due process] right meaningful, a sentencing court must assure itself that the information upon which it relies when fixing sentence is reliable and accurate.").

The Supreme Court recently emphasized that Rule 32 "contemplates full adversary testing of the issues relevant to a Guidelines sentence." *Burns v. United States*, — U.S. ——, 111 S.Ct. 2182, 2186, 115 L.Ed.2d 123 (1991). Holding that Rule 32 requires that the district court provide notice to the defendant that it is contemplating a *sua sponte* upward departure, including notice of the grounds supporting such a ruling, the Court explained:

> In our view, it makes no sense to impute to Congress an intent that a defendant have the right to *comment* on the appropriateness of a *sua sponte* departure but not the right *to be notified* that the court is contemplating such a ruling.

*Id.* (emphasis in original); *see supra* note 10.

The situation is less serious here in that defendant was on notice that the government proposed a two level enhancement as organizer and leader and, in general, of the basis for its assertions in that regard. He was, moreover, given full opportunity to comment upon, and to present evidence to rebut, that proposition. However, defendant was not told of certain unfavorable evidence the judge had previously heard. To the extent these damaging assertions remained unknown to him, his opportunity to comment was undercut. *See Burns*, 111 S.Ct. at 2186 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)) ("Th[e] right to be heard has little reality or worth unless one is informed."). Consistent with this reasoning, in *Curran* we required the district court to disclose to the defendant documents on which it was relying that had not been disclosed as part of the presentence report under Rule 32. 926 F.2d at 62.

By the same token, if the court expected to consider Cunniff's testimony at Novak's sentencing hearing on the issue of Berzon's role, Berzon should have been alerted in advance, perhaps at the presentence conference, so that Berzon could attempt to challenge it at his own hearing. *See United States v. Picard*, 464 F.2d 215, 220 & n. 9 (1st Cir.1972) (Prior to general disclosure of a PSI under Rule 32, we held: "[T]he substance of a presentence report, to the

extent it is relied upon, should be made known to the defendant" because, "[i]f the opportunity given to speak 'in mitigation of punishment' [under Rule 32(a)(1) at the time] is to be meaningful, the defendant and his counsel must have some sense of the information (including that contained in the presentence report) which may influence the court's sentencing decision."); *see also United States v. Landry,* 903 F.2d 334, 340 (5th Cir.1990) (the defendant must have an opportunity to address the court regarding matters outside the presentence report on which the court intends to rely in sentencing); *United States v. Rodriguez,* 897 F.2d 1324, 1328 (5th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 158, 112 L.Ed.2d 124 (1990) (defendant's opportunity in the sentencing hearing to object to the PSI's findings, which were amply supported in the record, and to present supporting evidence on his own behalf, satisfied the Rule 32 "comment" requirement, even though the PSI was allegedly based, in part, on possibly unreliable evidence never before the district court).[17]

The government points to cases from other circuits upholding instances where a sentencing court considered evidence from related trial proceedings of codefendants. In *United States v. Romano,* 825 F.2d 725

(2d Cir.1987), the Second Circuit held that the district court did not err in denying defendant's request for a hearing to challenge information presented as evidence in a related trial. The *Romano* court, however, noted:

> The pre-sentence report also contained the evidence established against Romano at that trial. Prior to sentencing, therefore, Romano was on notice of all relevant information that could be used in determining his sentence and had an opportunity to make appropriate objections. No more is required by the Due Process Clause or by Rule 32.

825 F.2d at 730. Likewise, in *United States v. Notrangelo,* 909 F.2d 363 (9th Cir.1990), the court of appeals held that the sentencing court could properly rely on evidence adduced at a codefendant's trial. In *Notrangelo,* as in *Romano,* the facts contained in the testimony relied upon were included in the presentence report, and Notrangelo was provided with an opportunity to object to the facts and present evidence on his own behalf at the sentencing hearing. 909 F.2d at 365.[18] We agree entirely with the results in those cases. The difficulty here, by way of contrast, is that the testimony and argument at Novak's sentencing included information *not* in the PSI

**17.** In *Curran,* we doubted that "due process compels an opportunity to inspect or challenge the information to be relied upon by the sentencing court," 926 F.2d at 61. We found no precedent for the view that the due process clause itself requires disclosure of all such information, and noted also that Fed.R.Crim.P. 32(c)(3) addresses particular situations in which nondisclosure of certain presentence report information is appropriate. *See supra* note 14; *see also Burns,* 111 S.Ct. at 2187 ("[W]ere we to read Rule 32 to dispense with notice [of intent to depart from the Guidelines and the grounds therefor], we would then have to confront the serious question whether notice in this setting is mandated by the Due Process Clause."); Fed. R.Crim.P. 32, advisory committee notes on 1966 amendments to subsection (c)(2) ("It is not a denial of due process of law for a court in sentencing to rely on a report of a presentence investigation without disclosing such report to the defendant or giving him an opportunity to rebut it (citing *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949); *Williams v. Oklahoma,* 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959)).

**18.** The recent case of *United States v. Pimentel,* 932 F.2d 1029 (2d Cir.1991), is similarly distinguishable. In that case, the court explained:

> As for Julio DeJesus's contention that he was denied due process because the district court failed to notify him that it would rely on facts from his brothers' trial in setting his base offense level, this claim is without foundation. To be sure, the [presentence report ("PSR")] on Julio DeJesus did not specifically state that facts from his brothers' trial would be employed to rebut his claim that his conspiratorial involvement was limited to one kilogram of cocaine. However, the PSR did set forth all the facts established at that trial that Judge Platt later relied on in finding that the offense involved two kilograms. By providing the appellant with a copy of the PSR, the Government provided him with notice of all the relevant information that could be used against him, and at his sentencing hearing, appellant had meaningful opportunity to challenge the accuracy and sufficiency of this information. Due process requires no more. 932 F.2d at 1032.

nor otherwise in the record in Berzon's case. This undisclosed information included Cunniff's testimony that Berzon *hired* Haskins as a courier, Cunniff's views about Novak's role as a broker between Goldin and Berzon, and information about Berzon's prior relationship with Goldin.

■ To be sure, we cannot say for sure whether and to what extent the district court actually relied on Special Agent Cunniff's testimony at codefendant Novak's sentencing regarding Berzon's role in the offense. The court said that it had heard the evidence "over and over again in a number of cases" and that it was relying on evidence "from the agents that dealt with Mr. Berzon and observed his conduct." The court did not disclose specifically what proceedings were being relied upon. When Berzon's attorney attempted to address the relevant evidence of which he was aware, the court did not mention Agent Cunniff's testimony at Novak's sentencing. The government contends in its brief on appeal that appellant's contention that the district court relied "exclusively" on Cunniff's testimony at Novak's sentencing "is largely speculation," and that this testimony "was but a third instance of eliciting essentially the same information." However, Cunniff's testimony, as noted, included significant statements not found in the PSI or in the record in Berzon's case. Berzon arguably was unable to challenge those statements because he did not know of them. Berzon was entitled to an opportunity to challenge the accuracy of presentence information presented to the district court. *Curran*, 926 F.2d at 62. Since we cannot determine the extent to which the district court may have relied on any such information, we cannot determine that any such error did not affect Berzon's substantial right not to be sentenced based on materially false or incorrect information. *Id.*

■ We hold that the appropriate remedy is to remand initially to the original sentencing judge. That judge is directed on remand to state, on the record, whether he did or did not rely materially on the information presented in Novak's hearing in finding Berzon to be an organizer or leader under U.S.S.G. § 3B1.1. If the judge states that he did *not* rely materially on that information, the present judgment of sentence shall stand. If the judge states that he did rely materially on evidence from the Novak hearing, he should vacate Berzon's sentence and Berzon should go before a different district judge for resentencing. *See United States v. Levy*, 897 F.2d 596, 599 (1st Cir.1990) (district court failed to comply with Rule 32(c)(3)(D); case remanded for district court to clarify whether it relied on challenged information in PSI with directions to vacate sentence if it so relied). Consistent with our practice in analogous situations, we believe that if resentencing is required, this should be done by a different district judge. *See Curran*, 926 F.2d at 64; *Mawson v. United States*, 463 F.2d 29, 31 (1st Cir.1972) ("It is difficult for a judge, having once made up his mind, to resentence a defendant, and both for the judge's own sake, and the appearance of justice, we remand this case to be redrawn.").[19]

---

19. We decline to find, as an alternative to remand under these circumstances, that the district court's possible reliance on the testimony at Novak's sentencing hearing was harmless error under Fed.R.Crim.P. 52(a). The government bears the burden of proving the facts at sentencing by a preponderance of the evidence. *United States v. Aymelek*, 926 F.2d 64, 67 (1st Cir.1991). We ordinarily review the district court's findings of fact for purposes of sentencing only for clear error. *United States v. Diaz-Villafane*, 874 F.2d 43, 48 (1st Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989). But to find harmless error here we must be satisfied that the district court would have been unreasonable—based on the evidence before it in Berzon's case (and excluding Novak's sentencing hearing)—to reject the PSI's conclusion that Berzon was the leader. To be sure, there was evidence suggesting Berzon's leadership role. Were we in the place of the sentencing court, we might well conclude Berzon was a leader, but we cannot say this was the only reasonable outcome. The evidence of leadership was suggestive, requiring inferences from assertions, for example, that Berzon physically gave Goldin the money and the car keys. Berzon presented evidence that Goldin could not have referred to him and his codefendants during the operation as "the Berzon group." Further, the only explicit testimony that Berzon employed a codefendant (Haskins), was Cunniff's statement at Novak's sentencing, and Cun-

We emphasize that we do not suggest that the district court was not entitled to hear the testimony at Novak's sentencing, and, thereafter, consider it when sentencing Berzon. All the sentencing court need to have done, in such event, was to timely advise Berzon in advance of sentencing that it heard or read, and was taking into account, that testimony, thus enabling him to respond to it before the sentence was set. *See Romano,* 825 F.2d at 729–30 (applying due process balancing test of *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), to evaluate adequacy of procedure afforded defendant to challenge accuracy of information from related trial relied upon in sentencing); *see also Prescott,* 920 F.2d at 143–45 (same where PSI allegedly relied on erroneous hearsay testimony). We acknowledged in *Curran* that "[a] district court has broad discretion in the information it may receive and consider regarding defendant and his conduct." *Curran,* 926 F.2d at 61 (citing cases). *See also Payne v. Tennessee,* — U.S. —, —, 111 S.Ct. 2597, 2606, 115 L.Ed.2d 720 (1991) ("In the federal system, we observed that 'a judge may appropriately conduct an inquiry broad in scope, largely unlimited as to the kind of information he may consider, or the source from which it may come.' ") (quoting *United States v. Tucker,* 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972)). Generally, there is no limitation on the information which a court may consider in sentencing other than that the information bear sufficient indicia of reliability to support its probable accuracy, and evidence not ordinarily admissible under the rules of evidence at trial may be considered. *See supra* note 15; 18 U.S.C. § 3661.[20] Furthermore, the district court has broad discretion to determine the proper means to call a defendant's attention to, and to allow him to challenge, presentence information. *Curran,* 926 F.2d at 62; *Prescott,* 920 F.2d at 144; U.S.S.G. § 6A1.3; *see also Romano,* 825 F.2d at 728 (the defendant does not have a right to a full-blown evidentiary hearing at sentencing); *see also United States v. Rios,* 893 F.2d 479, 481 (2d Cir. 1990) ("A district court has broad discretion to consider any information relevant to sentencing, including information adduced at a trial at which the defendant was not present."); *United States v. Mescaine–Perez,* 849 F.2d 53, 60 (2d Cir.1988) (same).[21]

We hold here only that, notwithstanding the wide scope of the sentencing court's discretion, a defendant may not be placed in a position where, because of his ignorance of the information being used against him, he is effectively denied an opportunity to comment on or otherwise challenge material information considered by the district court. Unlike in the *Romano* and *Notrangelo* cases, the PSI in this case, prepared prior to Novak's sentencing hearing, did not sufficiently include all of the purported factors relevant to Berzon's role in the offense which were later presented to the court at Novak's separate sentencing hearing. If the sentencing court relied materially on that later information in sentencing Berzon, Berzon must now be resentenced by a different judge.

*Appeal dismissed, but case remanded to the district court for further proceedings in accordance herewith.*

---

niff also testified at that hearing that Braun was likely financially an equal participant in the transaction. Under these circumstances, we cannot say that the sentencing court was bound to find that Berzon was a leader, and hence the harmless error standard has not been met.

**20.** 18 U.S.C. § 3661 (formerly codified at 18 U.S.C. § 3577), provides:
No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

**21.** Novak's sentencing hearing, unlike a trial, was not subject to the rules of evidence. Sentencing judges may consider information not subject to the rules of evidence.