# United States Court of Appeals
## For the First Circuit

No. 13-2097

UNITED STATES OF AMERICA,

Appellee,

v.

KEVIN ST. HILL,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Torruella, Dyk[*] and Kayatta,
Circuit Judges.

Stuart W. Tisdale, Jr., with whom Tisdale & Davis, P.A. was on brief, for appellant.
Margaret D. McGaughey, Assistant U.S. Attorney, with whom Thomas E. Delahanty II, United States Attorney, was on brief, for appellee.

October 1, 2014

---

[*] Of the Federal Circuit, sitting by designation.

**KAYATTA, Circuit Judge**. After Kevin St. Hill pled guilty to distributing oxycodone, the district court found that other uncharged drug sales by St. Hill were relevant to determining his guideline sentencing range. St. Hill appeals, arguing that the district court applied both the wrong standard and the wrong method of comparison in determining what uncharged drug sales were relevant to his sentence. We affirm.

## I. Background

In December, 2012, Kevin St. Hill pled guilty (without a plea bargain) to one count of distributing oxycodone in violation of 21 U.S.C. § 841 (a)(1) and (b)(1)(C). According to the government's version of the facts, on June 26, 2012, agents from the Drug Enforcement Agency ("DEA"), along with a confidential informant ("CI"), decided to purchase $600 worth of oxycodone pills from St. Hill. The CI called him, arranged for the sale, and drove (with a DEA task force agent) to the location in Augusta, Maine, where the sale was to take place. Shortly thereafter, a blue Mustang arrived. St. Hill emerged from the Mustang, climbed into the rear passenger seat of the DEA agent's car, and handed the CI 20 oxycodone pills. The agent then gave St. Hill $600, and St. Hill left.

In addition to the facts as we have described them, the Presentence Investigation Report ("PSR") related that on the day of the controlled buy, the CI had contacted St. Hill "in an effort to

-2-

purchase cocaine and Oxycodone.  St. Hill agreed to sell Oxycodone to [the CI], but stated that he did not have any cocaine at that time.  St. Hill did note that he could obtain cocaine in several hours."  The PSR also noted that the CI had "identified St. Hill as a large-scale trafficker of Oxycodone and cocaine in Central Maine."  St. Hill does not challenge this information on appeal.  Section 1B1.3(a) of the United States Sentencing Guidelines requires the sentencing judge, in calculating the guideline sentencing range, to take into consideration certain "relevant conduct" other than the offense of conviction.  Such relevant conduct includes, for certain offenses such as that to which St. Hill pled guilty, other drug sales that were "part of the same course of conduct or common scheme or plan as the offense of conviction."  U.S. Sentencing Guidelines Manual § 1B1.3(a)(2) (2012).

Paragraphs 3 and 4B of St. Hill's PSR described several other drug sales that the parties agreed constituted relevant conduct for purposes of calculating St. Hill's guideline sentencing range.  First, the PSR described a controlled buy on April 18, 2012, when another confidential source pulled up to the home of Thomas Flynn in Augusta.  St. Hill got into the car and sold the source 3.7 net grams of cocaine base for $600.  Second, the PSR explained that a CI (the same one, it appears, who participated in the controlled buy on June 26, 2012) recounted that he or she

bought oxycodone from St. Hill three times in one week sometime in April or May of 2012. Each time, the CI bought ten 30 mg oxycodone pills from St. Hill. All told, the offense of conviction and the undisputed relevant conduct resulted in St. Hill being held accountable for selling 3.7 grams of cocaine base and roughly 1.46 grams of oxycodone.

Paragraph 4A of the PSR also attributed to St. Hill a series of drug sales totaling an additional 76.65 grams of oxycodone. St. Hill contested both that the sales were established by sufficiently reliable evidence and that they were relevant conduct under the Guidelines. The section of the PSR discussing the sales reported as follows:

> Several confidential informants were interviewed regarding St. Hill's drug distribution activities. They consistently stated that St. Hill was a large-scale Oxycodone and cocaine base trafficker, who received those substances via shipments from New York. The confidential informants reported that St. Hill distributed the drugs in the Augusta and Waterville areas of Maine along with four or five other individuals from New York. They describe St. Hill as the leader of this group of individuals . . . . One confidential informant (hereinafter CI-3) advised that he/she obtained 30 mg Oxycodone pills from St. Hill between January and at least May 2012, which he/she subsequently resold. CI-3 reported that in January 2012, he/she received a conservatively estimated 5 (30 mg) Oxycodone pills per day for the 31 days in January. Therefore for the month of January 2012, it is conservatively estimated that he/she purchased 155 (30 mg Oxycodone pills) from St. Hill. CI-3 advised that from February 2012 through May 2012, he/she

-4-

purchased an estimated 20 (30 mg) Oxycodone pills per day from St. Hill. Since that period contains a total of 120 days, it is estimated that he/she purchased 2,400 (30 mg) Oxycodone pills from St. Hill between February 2012 and May 2012. Therefore, St. Hill is accountable for distributing a total of 2,555 (30 mg) Oxycodone pills to CI-2 [sic].

In disputing that the sales discussed in paragraph 4A of the PSR constituted relevant conduct for sentencing purposes, St. Hill's presentence memorandum emphasized that all of the transactions other than those in paragraph 4A "have certain similarities: they are for small quantities of drugs consistent with personal use, purchased with cash and apparently not intended for resale. They are isolated in time and do not involve continuing agreements to purchase further drugs. Finally, they are relatively close in time." He argued that the conduct described in paragraph 4A of the PSR "is not relevant conduct to the offense of conviction in that the nature of the conduct set forth in [paragraph 4A] is different in kind from that in ¶¶ 3 and 4B as to quantities, methods of distribution, participants, and nature of the transactions." He argued that the transactions could not be relevant conduct because they were neither part of a "common scheme or plan" nor the "same course of conduct" as the offense of conviction.

In a lengthy and detailed order, the district court rejected St. Hill's arguments and so included the paragraph 4A information in calculating his base offense level. This decision

increased the Guidelines sentencing range from 30-37 months to 84-105 months. The court ultimately sentenced St. Hill to 84 months' imprisonment. St. Hill timely appealed.

St. Hill pointedly does not argue on appeal that the Guidelines, as properly applied, would not have allowed the district court to find that the sales described in paragraph 4A of the PSR were relevant conduct for the purposes of sentencing on his offense of conviction. Rather, he argues only that, in two respects, the district court reached its conclusion by misapplying the Guidelines standards. He argues, first, that the district court applied the wrong legal standard because, according to St. Hill, the district court rested its finding that the sales described in paragraph 4A were relevant conduct on a test applicable only to conspiracy offenses (or offenses in which the conduct of someone other than the defendant is attributed to him for sentencing purposes). He argues, second, that the district court erred because it focused its attention and findings on whether the conduct reported in paragraph 4A was sufficiently connected only to the other undisputed relevant conduct, rather than directly to the offense of conviction.

## II. Standard of Review

St. Hill makes no claim that he presented to the district court the two arguments he now advances on appeal, and we have found no such presentation. Accordingly, we review for plain

error.  United States v. Tavares, 705 F.3d 4, 24 (1st Cir. 2013).

Under that standard, "[s]uccess on appeal requires [St. Hill] to

demonstrate: 1) an error; 2) that was plain or obvious; and which

3) affected his substantial rights; and also 4) seriously impaired

the fairness, integrity, or public reputation of the judicial

proceedings."  United States v. Santiago-Burgos, 750 F.3d 19, 24

(1st Cir. 2014).

### III. Analysis

**A.   The district court found that the paragraph 4A conduct was part of the same course of conduct as the offense of conviction.**

Guidelines section 1B1.3(a)(2) provides that, with

"fungible item crimes" like drug dealing, United States v. Blanco,

888 F.2d 907, 911 (1st Cir. 1989) (internal quotation marks

omitted), a defendant's base offense level should be calculated

based not merely on the offense of conviction, but also on, among

other things, "all acts and omissions committed, aided, abetted,

counseled, commanded, induced, procured, or willfully caused by the

defendant" "that were part of the same course of conduct or common

scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a).

"'Common scheme or plan' and 'same course of conduct' are two

closely related concepts."  Id. § 1B1.3 cmt. 9.  The Guidelines

commentary specifies that "[f]or two or more offenses to constitute

part of a common scheme or plan, they must be substantially

connected to each other by at least one common factor, such as

-7-

common victims, common accomplices, common purpose, or similar modus operandi." Id. Moreover,

> [o]ffenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses. Factors that are appropriate to [that] determination . . . include the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses. When one of the above factors is absent, a stronger presence of at least one of the other factors is required.[1]

Id.

St. Hill argues that the district court applied the "common scheme or plan" standard when it should have applied the "same course of conduct" standard. Under St. Hill's dichotomous view of the Guidelines standard, a "common scheme or plan" can only exist in the context of a conspiracy, or at least where someone else's conduct is being attributed to a defendant for sentencing

---

[1] Commentators have expressed some confusion as to why this section uses the term "offense" rather than, for example, "conduct." See Thomas W. Hutchison et al., Federal Sentencing Law and Practice § 1B1.3, authors' cmt. 7(b)(2014 ed.). Although the Guidelines generally define "offense" to include both the offense of conviction and all associated relevant conduct, see U.S.S.G. § 1B1.1 cmt. n. 1(H), the parties here focus on the use of "offense of conviction" in § 1B1.3(a)(2), and present no cogent argument based on the use of "offense" in the Guidelines commentary. Cf. United States v. Blackwell, 323 F.3d 1256, 1260 (10th Cir. 2003)(in addressing the victim-status enhancement under U.S.S.G. § 3A1.2, noting the distinction between the use of "offense" and "offense of conviction" as it pertains to the inclusion of relevant conduct).

purposes. While a conspiracy is certainly a good example of a "common scheme or plan," and so the phrases are sometimes used interchangeably, see, e.g., United States v. Wood, 924 F.2d 399, 403-04 (1st Cir. 1991), it is not readily apparent why a conspiracy in particular, or concerted action in general, is a necessary element that limits the definition of a common scheme or plan. In any event, we need not follow this analysis to its conclusion because St. Hill's starting premise--that the district court's finding of relevant conduct hinged on a finding that the conduct was part of a common scheme or plan--is simply wrong. The district court plainly said that the sales described in paragraph 4A "should be included as relevant conduct as part of a common scheme or plan and part of the same course of conduct under U.S.S.G. § 1B1.3." (emphasis added). Nor did the district court rest its conclusion on factors that are pertinent only to applying the "common scheme or plan" standard. The district court expressly considered, for example, the "commonalities" between the various transactions (i.e., their similarity) and the time interval between the repeated offenses.[2] So if the conduct was relevant conduct as part of the "same course of conduct," it matters not whether it was also part

---

[2] As noted above, two incidents are only part of the same course of conduct "if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses," which we determine by assessing, inter alia, "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." U.S.S.G. § 1B1.3 cmt. 9.

of a common scheme or plan.  We therefore turn to St. Hill's second argument--that the district court erred in how it decided that the conduct described in paragraph 4A was part of the same course of conduct as the offense of conviction.

**B.    There was no plain error in the district court's method of finding that the paragraph 4A conduct was part of the same course of conduct as the offense of conviction.**

The Guidelines provide that, to be "relevant conduct," uncharged conduct must be connected to the offense of conviction. See United States v. Santos Batista, 239 F.3d 16, 22 (1st Cir. 2001) ("[A] defendant must not only be responsible for any uncharged acts to be considered in his sentencing, but those acts also must be linked to the offense of conviction.").  St. Hill argues that a link sufficient to show the "same course of conduct" must be proved directly between the ostensibly relevant conduct and the offense of conviction--not merely between that conduct and some other relevant conduct.  And, indeed, several courts have so held. See United States v. Bullock, 454 F.3d 637, 639-42 (7th Cir. 2006) (noting that connecting disputed relevant conduct to other relevant conduct "doesn't make it relevant to [the] actual offense of conviction . . . .  That is, it's relevant only by association with other relevant conduct, through a kind of criminal transitivity. That's not good enough."); United States v. Pinnick, 47 F.3d 434, 436, 438-39 (D.C. Cir. 1995) (explaining that "the government must demonstrate a connection between count three and the offense of

-10-

conviction, not between count three and the other offenses offered as relevant conduct."). Cf. also United States v. Rhine, 583 F.3d 878, 885-86 (5th Cir. 2009) (describing the Guidelines as providing that "[a] separate, unadjudicated offense may be part of a common scheme or plan--and thus relevant conduct--if it is 'substantially connected to [the offense of conviction] by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi.'" (quoting U.S.S.G. § 1B1.3 cmt. 9(A))(alteration in original)); United States v. Cyr, 337 F.3d 96, 102-03 (1st Cir. 2003) (reasoning that while two prior heroin convictions were relevant conduct for the instant heroin offense, it was permissible to treat two Xanax-related convictions imposed jointly with those two heroin convictions not as relevant conduct).

On the basis of this reasoning, St. Hill argues that the district court employed an improper method of comparison in determining that the drug sales described in paragraph 4A were relevant conduct because it examined their nexus to the other (undisputed) relevant conduct, rather than to the offense of conviction. St. Hill is correct that the district court did not limit its examination to comparing the sales described in paragraph 4A to only the offense of conviction. Nor did it limit its description of the "same course of conduct" to facts that were manifest in all of the sales. For example, in confirming the scale of St. Hill's operation, the district court observed that he had

-11-

accomplices, even though those accomplices were not obviously involved in the offense of conviction. Similarly, in comparing the details of the drug business (as it found them) to the conduct described in paragraph 4A, the district court referred to St. Hill's ostensible practice of possessing firearms, although there were no firearms obviously involved in the offense of conviction. See, e.g., U.S.S.G. § 1B1.3 cmt. 9; United States v. Buck, 324 F.3d 786, 797 (5th Cir. 2003).

We observe, first, that St. Hill's trial counsel did not object to the district court's approach. To the contrary, trial counsel affirmatively invited the district court to examine the extent to which the paragraph 4A conduct shared traits in common with the conduct in paragraphs 3 and 4B. Our review of St. Hill's contrary position on appeal is therefore for plain error, at best. United States v. Tavares, 705 F.3d at 24.

Nor is it plain or obvious that the district court's acceptance of counsel's invitation actually led it to err. The district court ultimately and expressly acknowledged that the "uncharged conduct must be relevant to the charged conduct." The district court also focused, just as St. Hill says it should have, on the task of explaining whether or not the ostensibly relevant conduct "should be included in the same course of conduct or common scheme or plan as the drug trafficking offense for which [St. Hill stood] convicted."

Third, even if the district court erred in failing to limit its comparative analysis to the charged conduct and the putative relevant conduct, St. Hill fails to demonstrate that any such error affected his substantial rights.  See United States v. Dominguez Benitez, 542 U.S. 74, 81 (2004) (plain error must have "a prejudicial effect on the outcome of a judicial proceeding"); United States v. Gilman, 478 F.3d 440, 447 (1st Cir. 2007) (To demonstrate prejudice on plain error "[i]n the sentencing context . . . a defendant must" show "a reasonable probability that, but for the error, the district court would have imposed a different, more favorable sentence" (internal quotation marks omitted)).  We do not think that St. Hill has demonstrated a reasonable probability that the district court would have reached a different conclusion by comparing the offense of conviction only to the paragraph 4A sales.  The district court correctly noted that the offense of conviction and paragraph 4A sales shared commonalities in the type of drug, drug units, general price range, geography, and time frame.  St. Hill does not argue that the offense of conviction, taken alone, would be insufficient to support a finding that the paragraph 4A sales were relevant conduct.  He simply argues that the outcome might have been different under the proper method of analysis.  That is not enough to demonstrate prejudice affecting substantial rights.  See Gilman, 478 F.3d 440, 447; United States v. Carozza, 4 F.3d 70, 88-89 (1st Cir. 1993) (finding

no prejudice where defendant argued his Guidelines range "might" have been different had the district court not erred and the district court's calculation was "in all likelihood" correct).

Finally, given our plain error review, and St. Hill's limited focus on whether the right standards and methods were applied, we need not consider the extent to which the district court, in applying the correct standard and method, should have assigned more weight to the differences between the retail-level deals and the wholesale supply described in paragraph 4A, a matter not addressed in St. Hill's briefs on appeal. <u>Cf.</u>, <u>e.g.</u>, <u>Rhine</u>, 583 F.3d at 889 (finding insufficient similarity between a one-off $5 drug sale to an individual user and participation in a drug-trafficking ring selling drugs wholesale to mid-level dealers).

## IV. Conclusion

For the foregoing reasons, the judgment of the district court is **<u>affirmed</u>**.


**- Concurring Opinion Follows -**

**TORRUELLA, Circuit Judge (Concurring).** I join the court's opinion but write separately to note a disturbing trend in criminal prosecutions. All too often, prosecutors charge individuals with relatively minor crimes, carrying correspondingly short sentences, but then use section 1B1.3(a) of the Sentencing Guidelines ("Guidelines") to argue for significantly enhanced terms of imprisonment under the guise of "relevant conduct" -- other crimes that have not been charged (or, if charged, have led to an acquittal) and have not been proven beyond a reasonable doubt.[3]

The instant case provides a typical example of this trend. St. Hill was arrested, charged, and pleaded guilty to distributing twenty oxycodone pills with a net weight of 0.56 grams. Applying the Guidelines to just this offense, St. Hill's base offense level would have been 12. See U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 2D1.1(c)(14) (2012). Assuming the district court's other findings remained unchanged, St. Hill's total offense level would have been reduced to 9. With this

---

[3] A petition for a writ of certiorari currently pending before the Supreme Court addresses a subset of these cases in which acquitted conduct -- for which the jury explicitly found the defendant not guilty -- is nonetheless used by the judge at sentencing to increase the defendant's sentence. In Jones v. United States, petitioners argue for the ability to lodge an "as applied" challenge to the substantive reasonableness of their sentences. According to petitioners, their Guidelines ranges, and thus sentences, were significantly and unconstitutionally increased based solely on a judge-found fact which petitioners were acquitted of at trial -- their involvement in the drug-related conspiracy. Jones v. United States, 744 F.3d 1362 (D.C. Cir. 2014), petition for cert. filed, (U.S. May 6, 2014) (No. 13-10026).

-15-

offense level, and a criminal history category of IV, the Guidelines would have yielded an advisory sentence of 2-8 months. See id. at Sentencing Table. However, due to three incidents of "relevant conduct" -- (1) an alleged sale of 3.7 net grams of cocaine base to one confidential informant; (2) three alleged ten-pill oxycodone sales totaling 0.9 grams to a second confidential informant; and (3) the 76.65 grams of wholesale oxycodone transactions that are at issue before the court[4] with a third confidential informant -- his base offense level jumped to 28 and his resulting total offense level became 25. This equated to an advisory Guidelines sentence of 84-105 months of imprisonment.

In other words, St. Hill was subject to an additional six to eight years in prison due to isolated drug sales not directly related to the twenty oxycodone pills which led to his conviction, all of which he was never arrested for, never charged with, never pleaded guilty to, and never convicted of by a jury beyond a reasonable doubt. This is a prime example of the tail wagging the dog. Even more disturbing: the government could, if it so chooses, still charge St. Hill for these uncharged crimes in a separate proceeding, and he could be convicted and sentenced again without protection from the Double Jeopardy Clause. See Witte v. United States, 515 U.S. 389, 406 (1995) ("Because consideration of

_____

[4] That St. Hill does not challenge two of the three incidents of "relevant conduct" does not make the practice any less disturbing.

-16-

relevant conduct in determining a defendant's sentence within the legislatively authorized punishment range does not constitute punishment for that conduct, the instant prosecution does not violate the Double Jeopardy Clause's prohibition against the imposition of multiple punishments for the same offense.").

This is not to say that section 1B1.3(a)'s "relevant conduct" considerations have no place in sentencing defendants. Nor is it to say that various other factors -- such as a defendant's prior convictions, remorse, family responsibilities, and civic contributions -- are not appropriate sentencing considerations, or that they must be proven to a jury beyond a reasonable doubt. See 18 U.S.C. § 3553(a)(1) (2010) ("The court, in determining the particular sentence to be imposed, shall consider . . . the history and characteristics of the defendant . . . ."); U.S.S.G. § 4A1.1 (explaining how prior convictions are used to calculate a defendant's criminal history category). Rather, the point is that if the government wishes to punish a defendant for certain alleged criminal conduct, then that conduct should be charged in an indictment.

Using the "relevant conduct" enhancement on unrelated narcotics transactions simply because the transactions involve characteristics common to most, if not all, narcotics transactions in a given region -- i.e., similar types of narcotics, comparable amounts of narcotics, comparable prices, a common geography, and

occurring within a relatively short time frame (and not only hours or days but extending as long as weeks or months) -- seems to go far beyond what the Guidelines intended. This is especially striking when one considers that the burden of proof for this "relevant conduct" is not the "beyond a reasonable doubt" standard required to convict at trial but rather the much lower "by a preponderance of the evidence" standard. Compare U.S.S.G. § 6A1.3 cmt. ("The Commission believes that use of a preponderance of the evidence standard is appropriate to meet due process requirements and policy concerns in resolving disputes regarding application of the guidelines to the facts of a case.") with United States v. Alleyne, 133 S. Ct. 2151, 2156 (2013) ("The Sixth Amendment . . . . in conjunction with the Due Process Clause, requires that each element of a crime be proved to the jury beyond a reasonable doubt."). See also United States v. Watts, 519 U.S. 148, 156 (1997) (citing the commentary to U.S.S.G. § 6A1.3 and stating that the Supreme Court has "held that application of the preponderance standard at sentencing generally satisfies due process").

Put differently, if the government intends to seek an increase in a criminal defendant's sentence for conduct that independently may be subject to criminal liability, the government should charge that conduct in the indictment. The Fifth Amendment requires that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law," U.S. Const.

-18-

amend. V, while the Sixth Amendment provides an accused with the right to a trial "by an impartial jury," id. amend. VI. The practice of arguing for higher sentences based on uncharged and untried "relevant conduct" for, at best, tangentially related narcotics transactions seems like an end-run around these basic constitutional guarantees afforded to all criminal defendants. Cf. Alleyne, 133 S. Ct. at 2162 ("When a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury."). The government's role is to ensure justice, both to the accused and to the public at large; it is not to maximize conviction rates and argue for the greatest possible sentence. And, while it is unclear to me whether this trend is due to shaky police work resulting in cases that cannot be proven beyond a reasonable doubt, prosecutorial laziness, or other less nefarious factors, it remains troubling regardless.

I am hardly the first to notice or call attention to this injustice, and I am sure I will not be the last. See, e.g., United States v. Ritsema, 31 F.3d 559, 567 (7th Cir. 1994) ("Our point is only that the relevant conduct provision, interpreted in an overly broad manner, has the potential of being a coarse instrument capable of causing years of serious incidental criminality to ride in at sentencing on the coattails of a relatively minor conviction."); Susan N. Herman, The Tail that Wagged the Dog:

<u>Bifurcated Fact-Finding Under the Federal Sentencing Guidelines and the Limits of Due Process</u>, 66 S. Cal. L. Rev. 289, 292 (1992) ("This system also imposes strict procedural obligations on prosecutors who wish to charge a defendant with a particular crime, but then provides them with a shortcut alternative means of having a defendant punished for an additional offense that they might not have been able to prove beyond a reasonable doubt, so long as the defendant has been convicted of a related offense.").[5]

Nevertheless, as a judge, it is my responsibility to faithfully apply the law as articulated by both the Supreme Court and this court, and I do not dispute that both the Guidelines and our interpretation of them currently condone this questionable

---

[5] <u>See also</u> <u>United States</u> v. <u>Kikumura</u>, 918 F.2d 1084, 1119-21 (3d Cir. 1990) (Rosenn, J., concurring) (expressing "concern that the Government's manipulation of [the defendant's] charge and sentencing illustrates the problem reported by many courts that the sentencing guidelines have replaced judicial discretion over sentencing with prosecutorial discretion," which may violate a defendant's right to due process by allowing the government to "deliberately collateralize at the charge and trial stage the most critical element for [a defendant's] sentencing"), <u>overruled by</u> <u>United States</u> v. <u>Fisher</u>, 502 F.3d 293 (3d Cir. 2007); Fed. Crim. Procedure Comm. of the Am. Coll. of Trial Lawyers, <u>The American College of Trial Lawyers Proposed Modifications to the Relevant Conduct Provisions of the United States Sentencing Guidelines</u>, 38 Am. Crim. L. Rev. 1463, 1465 (2001)("[T]he Committee asserts that defendants who are charged and convicted of particular criminal offenses should have their sentences primarily based upon those offenses, not offenses which the prosecutor has elected not to charge or try to a judge or jury or of which they have been acquitted."); <u>id.</u> at 1484 & n.150 (collecting cases in which "judges have recognized that . . . the operation of the relevant conduct rules is unjust from the perspective of an ordinary citizen and therefore invites disrespect for the law").

process.  See Witte, 515 U.S. at 396, 406 (finding no constitutional violation where the sentence was based in part on a cocaine offense that defendant "clearly was neither prosecuted for nor convicted of"); United States v. Lombard, 102 F.3d 1, 4 (1st Cir. 1996) (finding no constitutional violation where the district court "choose[s] to give weight to the uncharged offenses in fixing the sentence within the statutory range if it finds by a preponderance of evidence that they occurred").  I nonetheless question whether this interpretation should be revisited -- either by the courts or by revisions to the Guidelines.