# United States Court of Appeals
## For the First Circuit

No. 15-1316

UNITED STATES OF AMERICA,

Appellee,

v.

RICHARD MAGEE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Torruella, Lynch, and Barron,
Circuit Judges.

Robert C. Andrews, with whom Robert C. Andrews Esquire P.C. was on brief, for appellant.

Margaret D. McGaughey, Assistant United States Attorney, with whom Thomas E. Delahanty II, United States Attorney, was on brief, for appellee.

August 17, 2016

**BARRON**, <u>Circuit Judge</u>. Richard Magee pleaded guilty to multiple drug charges and a felon in possession of a firearm charge. He challenges both his conviction and his sentence. Finding no errors, we affirm.

**I.**

On December 12, 2013, the government issued a twenty-count indictment against Magee, Joshua Magee, and Craig Mercer. The charges against Magee included one count of felon in possession of a firearm, 18 U.S.C. §§ 922(g)(1), 924(a)(2), thirteen counts of distributing cocaine (on dates that ranged from September 2011 to October 2013), 21 U.S.C. § 841(a)(1),[1] one count of possession with intent to distribute cocaine, <u>id.</u>, and one count of conspiracy to commit witness tampering, 18 U.S.C. § 1512(b)(1).

With respect to the distribution counts, the government alleged that Magee had dealt cocaine to a confidential informant in 2011, to David Jones in 2012 and 2013, and to Mercer in 2013. The allegations as to the possession count stemmed from a search of Magee's residence, which was conducted pursuant to a search warrant, on October 4, 2013. During that search, police recovered various items, including, among other things, firearms and cocaine.

---

[1] Seven of these counts involved the use of a communication facility, a telephone, in furtherance of the offense. <u>See</u> 21 U.S.C. § 843(b).

On February 18, 2014, Magee moved for a so-called Franks hearing in order to challenge the validity of the search warrant that authorized the search of his home on October 4, 2013. See Franks v. Delaware, 438 U.S. 154, 155-56 (1978) ("[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request."). On July 11, 2014, the District Court denied Magee's request for a Franks hearing.

On October 29, 2014, Magee pleaded guilty to one count of felon in possession, three counts of distributing cocaine, and one count of possession with intent to distribute cocaine. The probation office put together a pre-sentence report ("PSR") that included a calculation of the total drug quantity for which Magee was responsible under the United States Sentencing Guidelines (the "Guidelines"). The PSR calculated a total drug quantity of 1,220.1 grams of cocaine, which led to Magee's being assigned a base offense level ("BOL") of 24. See U.S.S.G. §2D1.1(c)(8) (providing that the defendant shall have a BOL of 24 if the offenses involved at least 500 grams but less than two kilograms of cocaine).

The PSR assigned four criminal history points to Magee and thus calculated a criminal history category of III. Three of

- 3 -

the four criminal history points were assigned on the basis of a 1994 money laundering conviction, for which Magee was sentenced to a term of imprisonment of 30 months and from which imprisonment Magee was released on August 30, 1996.

The District Court adopted the PSR's calculation of the Guidelines range -- which was 70-87 months, based on a BOL of 24[2] and a criminal history category of III -- and sentenced Magee to a term of imprisonment of 70 months. The District Court sentenced Magee to a term of supervised release of three years to run concurrently on all counts.

In doing so, the District Court found that the PSR's drug quantity calculation was "entirely correct" and "probably a conservative estimate." The District Court also concluded that Magee's criminal history category was correctly calculated.

This appeal followed.

## II.

We start with Magee's challenge to his convictions for felon in possession of a firearm and possession with intent to distribute to cocaine. These challenges are based on the District Court's denial of Magee's request for a Franks hearing.

---

[2] The PSR calculated a total offense level of 25, after applying a two-point dangerous weapon enhancement, a two-point obstruction-of-justice enhancement, and a three-point acceptance-of-responsibility reduction to Magee.

To be entitled to a Franks hearing, the defendant must make "two substantial preliminary showings." United States v. McLellan, 792 F.3d 200, 208 (1st Cir. 2015) (quoting United States v. Rigaud, 684 F.3d 169, 173 (1st Cir. 2012)). First, the defendant must show that a false statement or omission in the affidavit that supported the warrant in question "was made knowingly and intentionally or with reckless disregard for the truth." Id. (quoting Rigaud, 684 F.3d at 173). Second, the defendant must show that the "falsehood or omission [must have been necessary] to the finding of probable cause" -- that is, the falsehood or omission must be material. Id. (alteration in original) (quoting Rigaud, 684 F.3d at 173). "In the case of an omission, this means establishing that the inclusion of the omitted information 'would have led to a negative finding by the magistrate on probable cause.'" Id. (quoting Rigaud, 684 F.3d at 173 n.5). A failure to make either of these two showings is fatal to the defendant's challenge. Id.[3]

---

[3] Magee contends that the District Court relied on materials provided by the government in deciding Magee's Franks motion. Some courts have held that, in evaluating a Franks motion, courts must limit their review to the materials that the defendant submits. See, e.g., United States v. McMurtrey, 704 F.3d 502, 510 (7th Cir. 2013). In United States v. Graf, 784 F.3d 1 (1st Cir. 2015), we assumed without deciding that courts were so limited and concluded, on the basis of the evidence submitted by the defendant, that the defendant failed to make a substantial preliminary showing of falsehood. Id. at 7. We likewise assume without deciding whether courts are limited to evaluating the materials submitted by the

We begin by reciting the pertinent aspects of the affidavit that supported the search warrant, which was put together by Drug Enforcement Administration ("DEA") Agent Bourque. The affidavit states that in 2011, a confidential informant ("CI") engaged in a controlled buy of cocaine from Magee and that the CI told agents that Magee was involved in distributing kilogram quantity amounts of cocaine. The affidavit then states that agents intercepted phone conversations between Magee and Jones, which led Agent Bourque to believe that Magee was distributing personal-use amounts of cocaine to Jones. In particular, the affidavit describes a conversation in which Jones requested the "killer shit" -- which Agent Bourque interpreted to be a coded reference to cocaine -- that Magee gave him "the other day in the bathroom," to which Magee responded that he "ke[pt] [that stuff] at home" and that he would "pull some out for Jones tomorrow" (i.e., September 20, 2013).

The affidavit also describes a series of intercepted phone conversations that took place on September 20, 2013. In those conversations, Magee and Jones discussed meeting up at Ruski's, a restaurant in Portland, Maine. According to the affidavit, Agent Bourque interpreted these conversations as

_____

defendant in ruling on a Franks motion. As we explain, if we consider the affidavit alone, Magee has failed to demonstrate that the omitted information was material. McLellan, 792 F.3d at 208.

- 6 -

attempts to establish a time and place for a cocaine transaction.
In one of these conversations, the affidavit states, Magee asked
Jones, who was at Ruski's at the time, to tell "Craig," who was
also at Ruski's at the time, to wait for him there.

The affidavit next states that agents observed Jones
arrive at Magee's house, go inside for a short time, and then
depart. According to the affidavit, agents then observed Magee
leave his residence in a car. Paragraph 14 of the affidavit
provides in relevant part:

> Agents followed Magee to Ruski's where agents observed
> Magee exit his vehicle carrying something under his arm.
> Magee approach [sic] a gold Saturn later found to belong
> to Craig Mercer. Magee was observed opening the driver's
> door and bending over into the interior. Agents observed
> Magee move around the interior, stand up and approach
> Mercer and speak to him on the street. After meeting
> with Magee, Mercer departed. A short time later, police
> stopped Mercer's vehicle. A subsequent search of the
> vehicle led to the discovery of approximately two ounces
> of [cocaine]."

Finally, the affidavit describes a set of intercepted
phone conversations between Magee and Jones that took place after
the events on September 20, 2013. During these calls, Jones told
Magee that he had the $400 that he owed him and that he wanted
more of the "crazy shit." Magee at one point told Jones that his
friend, "Chemical Craig," got arrested with "two O's on him," and
that he planned to bail the friend out, though that would mean
"another 2G's, plus bail." Agent Bourque interpreted "another
2G's" to be a reference to the loss of revenue that Magee sustained

- 7 -

from having supplied two ounces of cocaine -- "two O's" -- to Mercer, or "Chemical Craig."

Magee contends that Paragraph 14 of the affidavit contains materially false omissions.[4] Specifically, Magee contends that the paragraph omits that agents observed Magee give the "something" that he was "carrying" "under his arm" to a bartender in Ruski's and not to Mercer. And Magee contends that the paragraph omits that agents did not actually observe Magee place anything into Mercer's car.

The District Court concluded that the first omission "[did] leave the troubling false impression that [Magee] left the package [i.e., the 'something'] in the Saturn," but that the second omission was not misleading. In any event, the District Court concluded, the omissions were not material because "[e]ven had [the omitted information] been included, the court could have found probable cause to believe that [Magee] supplied cocaine to Mercer." We agree.

The District Court reached its conclusion about the materiality of the omitted information by pointing to Agent

---

[4] Magee contends that the District Court erroneously treated his claim regarding Paragraph 14 as a false statement claim rather than a false omission claim. We see no basis for this contention, as the District Court clearly understood Magee's claim to be one of omission. See United States v. Richard Magee, No. 2:13-cr-176-GZS, ECF No. 205: 7 (D. Me. 2014) ("The omission of the fact that [Magee] left the package he was carrying with the bartender . . . ." (emphasis added)).

Bourque's description of the intercepted calls that took place between Magee and Jones prior to and including September 20 (and particularly the reference to "Craig"), the agents' observations of Magee and Mercer at Ruski's (including the omitted fact), and the discovery of cocaine in the Saturn shortly after the Ruski's encounter. But there is another fact in the affidavit that directly bears on the question of materiality -- specifically, the affidavit's description of the call in which Magee told Jones that his friend "Chemical Craig" got "busted" with "two O's" on him. That fact, when combined with the other facts that the District Court identified, and when taking into account the omitted information, established probable cause to believe that Magee supplied cocaine to Mercer on September 20. United States v. Gomez, 716 F.3d 1, 8 (1st Cir. 2013) ("The agents reasonably believed that Pena would purchase a kilogram of cocaine at this meeting based on the code used by Pena [which involved reference to cocaine as 'girl'] and the conversations with Individual No. 1, with whom he arranged the meeting over the phone to get the cocaine, and Individual No. 2, to whom Pena intended to sell the drugs."). As the omitted information did not even vitiate probable cause to believe that Magee supplied cocaine to Mercer on September 20, we cannot say that the omitted information vitiated probable cause to believe that cocaine would be found in Magee's home, especially given the other evidence that Magee dealt cocaine and

that Magee stored cocaine at his home.  Thus, the District Court

did not clearly err in concluding that the omitted information was

not material.  See United States v. Parcels of Land, 903 F.2d 36,

46 (1st Cir. 1990).[5]

## III.

We now turn to Magee's challenges to his sentence.  None

are persuasive.

## A.

Magee initially appears to challenge, as he did below,

the District Court's determination regarding the drug quantity

attributable to Magee.  The District Court found that Magee was

responsible for distributing or possessing with intent to

---

[5] Magee contends that the District Court ought to have determined whether the affidavit was sufficient absent the "stale" information from 2011 concerning Magee's dealings with the CI.  We have held that for crimes of an ongoing nature, it is appropriate for an affidavit to contain some information that is a few years old, especially when that information simply serves to corroborate more recent information.  See United States v. Morales-Aldahondo, 524 F.3d 115, 119 (1st Cir. 2008) ("When evaluating a claim of staleness, we do not measure the timeliness of information simply by counting the number of days that have elapsed.  Instead, we must assess the nature of the information, the nature and characteristics of the suspected criminal activity, and the likely endurance of the information." (citation omitted)); United States v. Reiner, 500 F.3d 10, 15 (1st Cir. 2007) (concluding that it was appropriate for court to consider evidence that was two to three years old given ongoing nature of the crime and recent evidence of criminal activity); United States v. Feliz, 182 F.3d 82, 87 (1st Cir. 1999) (concluding that information regarding three-month-old drug transactions was not stale given ongoing nature of defendant's drug trafficking activity (citing United States v. Greany, 929 F.2d 523, 525 (9th Cir. 1991) (concluding that two year-old information relating to marijuana operation was not stale))).

distribute 1,220.1 grams of cocaine, consistent with the PSR's drug quantity calculation. On that basis, the District Court calculated a BOL of 24, which applies if the defendant was responsible for between 500 grams and two kilograms of cocaine. See U.S.S.G. §2D1.1(c)(8). In doing so, the District Court attributed over 1,000 grams of cocaine to Magee as relevant uncharged conduct. See United States v. Cortés-Cabán, 691 F.3d 1, 26 (1st Cir. 2012) ("[T]he quantity of drugs attributable to a defendant for sentencing purposes is based on both the charged conduct and the relevant uncharged conduct."); United States v. St. Hill, 768 F.3d 33, 36 (1st Cir. 2014) (providing that "relevant [uncharged] conduct" in the context of drug offenses includes offenses that are "part of the same course of conduct or common scheme or plan as the offenses of conviction" (citing U.S.S.G. §1B1.3(a)(2))). Among the transactions that were characterized as relevant uncharged conduct were transactions in which Magee allegedly dealt large, distribution-level amounts of cocaine to a person by the name of Michael Paul between 2010 and 2012.

Magee contends that it was error to attribute the Paul drug quantities -- which amounted to 850.50 grams of cocaine -- to him because the underlying Paul transactions precede the offenses of conviction by about two years and involve large, distribution-level amounts of cocaine rather than the small, personal-level amounts of cocaine that characterize the offenses of conviction.

- 11 -

See generally U.S.S.G. §1B1.3(a)(2).  Magee also contends that Paul's drug quantity testimony is too unreliable to credit as a general matter, given Paul's admitted memory problems.

But the District Court found that the PSR's drug quantity calculation was correct based on Paul's drug quantity testimony "and the other evidence . . . [it] cited."  That "other evidence" included an intercepted call in which Magee discussed drug quantity with Jones ("Call 3869").  The government argued below that Call 3869 itself was sufficient to establish that Magee was responsible for 1,000 grams of cocaine and thus that a BOL of 24 was warranted.[6] On appeal, the government again contends that Call 3869 independently establishes that Magee dealt in 1,000 gram quantities of cocaine and thus that the District Court did not err in calculating a BOL of 24 for Magee.  The government further contends that Magee, by virtue of his failure to address Call 3869,

---

[6] Call 3869, which took place on August 23, 2013, provides in relevant part:
> Magee: Sounds good brother but in the meantime if you need something you know what, I go once a week only and I'm [. . .] usually only good for a day.
> Jones: Yeah I know. [. . .]
> Magee: Come back with fucking a thousand and they are gone in fucking two hours you know?
> Jones: Yeah, I'm not looking for anything bigger than that . . .

A DEA agent testified that the reference to "a thousand" was a coded reference to 1,000 grams of cocaine.

- 12 -

waived any challenge to the District Court's drug quantity and BOL determinations.

In his briefing to this Court, Magee did not address Call 3869. At oral argument, moreover, Magee conceded that the District Court's drug quantity and BOL determinations were adequately supported. Magee clarified that the purpose of his objection to Paul's drug quantity testimony was to contest the District Court's criminal history calculation, and not the District Court's drug quantity and BOL calculations.[7] Under these

---

[7] Magee contends that the District Court erred in considering Michael Paul's drug quantity testimony for an additional reason. Specifically, Magee contends that Paul's testimony was tainted by his interactions with a DEA agent by the name of Paul Wolf -- who allegedly was under investigation by the DEA on account of his relationship to Magee -- and that the prosecutor committed misconduct in having Paul testify about drug quantity. But the only case upon which Magee relies for the proposition that prosecutorial misconduct occurred, United States v. Berzon, 941 F.2d 8 (1st Cir. 1991), did not involve a claim of prosecutorial misconduct at all, see id. at 17-21. Rather, the issue in that case was whether the trial judge, in sentencing the defendant, relied upon certain evidence on which the defendant did not have an opportunity to comment. See id. Here, Magee was aware of all the information upon which the District Court relied at sentencing and was aware of the potential issues regarding Wolf and Paul prior to the prosecutor's introduction of Paul as a witness. We thus do not perceive any basis for concluding that prosecutorial misconduct, of the kind that Magee alleges, occurred. In any event, as Magee concedes, the District Court's drug quantity and BOL determinations were independently supported by Call 3869, and so any error in the consideration of Paul's testimony was harmless. See United States v. Hernández, 218 F.3d 58, 71 (1st Cir. 2000) (finding that any error in the district court's attribution of "all 3,017 kilograms" of cocaine to the defendant was harmless, as the sentencing range was not affected by the purported error); see also infra note 8.

- 13 -

circumstances, we conclude that Magee has waived any challenge to the District Court's drug quantity and BOL determinations.  See United States v. Taveras, 118 F. App'x 516, 517-18 (1st Cir. 2004) (affirming district court's drug quantity calculation, which was based on the testimony of a certain individual, because the defendant conceded that the individual's "testimony, if taken at face value, supports the disputed drug-quantity finding" and because the district court did not err in crediting that testimony).

**B.**

Magee also challenges the District Court's criminal history calculation.  That calculation yielded a criminal history category of III for Magee and was based in large part on the inclusion of Magee's 1994 money laundering conviction.

In calculating Magee's criminal history category, the District Court found that the "instant" offense commenced in August 2011 because "relevant" uncharged conduct, see U.S.S.G. §1B1.3, occurred in August 2011.  See id. §4A1.2(e)(1) ("Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted.  Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period."); id. §4A1.2 cmt. 8 (providing that "the

term 'commencement of the instant offense' includes any relevant conduct" (citing id. §1B1.3)). For this reason, the District Court concluded that Magee's 1994 money laundering conviction could be counted for purposes of calculating Magee's criminal history category, as that conviction resulted in a 30-month sentence of imprisonment from which Magee was released on August 30, 1996 (i.e., within the 15-year "applicable time period" for counting such convictions). Id. §4A1.2(e)(1).

Magee contends, as he did below, that the District Court erred in finding that the "instant" offense commenced in August 2011. Magee contends that the instant offense actually commenced in 2013. Magee thus contends that the 1994 conviction fell outside the applicable 15-year time period. On this view, Magee should have been assigned a criminal history category of I rather than a criminal history category of III.

But the problem for Magee is that in sentencing him, the District Court emphasized the seriousness of Magee's prior offenses, noted that Magee "dodged a bullet" in 2006 when a drug trafficking charge against him was dismissed, and stated:

> In this case my view is that, regardless of whether the defendant is looking at a criminal history category of II with a 63 to 78 range or a III with a 70 to 87 range, the sentence should be the same. I'm going to order a sentence of 70 months, which is the low end of the guideline range at III and a 70 months, which would have been a middle of the guideline range at a criminal history category of II. I think that's the appropriate sentence.

- 15 -

The District Court further stated that it "certainly wouldn't go down two [levels]" because a criminal history category of I was not "appropriate," when trial counsel clarified that her argument had been that Magee should have been assigned a criminal history category of I. And when the government subsequently asked the District Court to clarify that it would sentence Magee to 70 months even under a criminal history category of I, the District Court responded affirmatively.

Because the District Court made clear that it would have sentenced Magee to 70 months regardless of whether Magee's criminal history category was I, II, or III, any error in the calculation of Magee's criminal history was harmless. See United States v. Romero-Galindez, 782 F.3d 63, 70-71 (1st Cir. 2015) (concluding that alleged error in calculation of criminal history was harmless where the sentencing judge "made it apparent that [defendant's] criminal history category did not affect the ultimate sentence imposed," indicated that "he would not have gone for the even more permissive sentence imposed by the supposedly correct [criminal history category]" favored by defendant, and suggested that he "might not have found [the defendant's criminal history category] to accurately reflect [defendant's] criminal history"). And the harmlessness of the error is so clear that we reject Magee's challenge on that basis, even though the government did not press

a harmless error argument on appeal.  See United States v. Rose, 104 F.3d 1408, 1414-15 (1st Cir. 1997) (concluding that appellate courts may "consider the issue of harmlessness sua sponte" and suggesting that sua sponte disposition is especially appropriate if, among other things, the harmlessness is certain and reversal would "result in protracted, costly, and ultimately futile proceedings in the district court" (quoting United States v. Giovannetti, 928 F.2d 225, 227 (7th Cir. 1991) (per curiam))).[8]

## IV.

For the reasons given, we **affirm**.


**-Concurring Opinion Follows-**

---

[8] We also conclude that the sentence imposed in this case was substantively reasonable, given the significant, ongoing nature of Magee's drug and weapons activities. United States v. Tavares, 705 F.3d 4, 27 (1st Cir. 2013) ("[E]ven if we are satisfied that an error did not affect the district court's determination of the sentence, we still must review the sentence for substantive reasonableness [before we conclude that remand is not warranted].").

**TORRUELLA**, <u>Circuit Judge</u>. **(Concurring).** Although I join the court's opinion finding that Magee waived any challenge to the district court's drug quantity calculation, I write separately to note my continuing disagreement with the government's practice of charging relatively minor crimes, while using section 1B1.3(a) of the Sentencing Guidelines (allowing for consideration of "relevant [uncharged] conduct") to argue for significantly enhanced terms of imprisonment. <u>United States</u> v. <u>St. Hill</u>, 768 F.3d 33, 36 (1st Cir. 2014). As I argued in <u>St. Hill</u>, it is constitutionally suspect to drastically increase a defendant's sentence based on conduct that was neither proven beyond a reasonable doubt nor to which the defendant plead guilty. 768 F.3d at 39-42 (Torruella, J., concurring).

This case provides the perfect example of how egregious this enhancement may be. Magee pled guilty to four drug charges, encompassing conduct that had a total cocaine amount of 40.8 grams (three separate sales of 3.5 grams plus 29.3 grams seized in his home). This, along with his criminal history, would have resulted in a sentencing range of, at most, 18 to 24 months' imprisonment. U.S.S.G. § D1.1(c)(14) (providing an offense level of 12 when the cocaine amount is less than 50 grams).[9] Instead, when relevant

---

[9] Combined with the two-point dangerous-weapon enhancement, two-point obstruction-of-justice enhancement and three-point acceptance-of-responsibility reduction this produces a total

related conduct was taken into consideration, Magee was sentenced based on a significantly larger amount of cocaine (1,220.1 grams, supra, at 10-11). This resulted in a sentencing range of 70 to 87 months' imprisonment. In other words, Magee's sentence was enhanced by a minimum of almost four years (nearly quadrupling his total sentence) on the basis of conduct that was neither part of his guilty plea nor proven beyond a reasonable doubt. If the government wishes to hold Magee accountable for distributing 1,220.1 grams of cocaine then it should charge him with offenses that contain a corresponding amount of cocaine.[10] Nevertheless, because Magee appeared to waive this issue I join the majority's opinion.

_____

offense level of 13. Supra note 2, at 4. If we assume, as the district court appeared to do, a criminal history category of, at most, III, this produces the sentencing range of 18 to 24 months' imprisonment. See U.S.S.G. at Sentencing Table.

[10] As the government stated in its brief: After taking the quantities included in the charges into account "only 350 additional grams of cocaine were needed to put the quantity within the range of 500 grams to 2 kilograms" for which the government wanted to hold him accountable. Put differently, this means that less than a third of the minimum amount required for a base offense level of 24 was included in the indictment.